UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF INDIANA

| | |
|---|---|
| CHARLES DALE, )<br>)<br>Plaintiff, )<br>vs. )<br>)<br>OFFICER MATHEW MIELKE, )<br>)<br>Defendant. ) | 1:07-cv-1397-DFH-TAB |

**Entry Discussing Motion for Summary Judgment**

A police officer's ability to make an arrest "necessarily carries with it the right to use some degree of physical coercion or threat thereof to effect it." *Graham v. Connor,* 490 U.S. 386, 396 (1989). Nonetheless, the Fourth Amendment prohibits the use of excessive force during the execution of a seizure. *Id.* at 395. Plaintiff Charles Dale alleges in this civil rights action that the defendant police officer used constitutionally excessive force when arresting Dale on August 25, 2007. The defendant, however, has shown through his unopposed motion for summary judgment that this was not the case and that no reasonable jury could conclude otherwise. Accordingly, his motion for summary judgment (dkt 29) must be **granted.** This conclusion is based on the following facts and circumstances:

1.  The standard for evaluating and acting on a motion for summary judgment is well known. Summary judgment is warranted "if the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law." **FED.R.CIV.P.** 56(c). "'A genuine issue of material fact arises only if sufficient evidence favoring the nonmoving party exists to permit a jury to return a verdict for that party.'" *Springer v. Durflinger,* 518 F.3d 479, 483 (7th Cir. 2008)(quoting *Sides v. City of Champaign,* 496 F.3d 820, 826 (7th Cir. 2007), and *Brummett v. Sinclair Broad. Group, Inc.,* 414 F.3d 686, 692 (7th Cir. 2005)).

    a.    The Supreme Court has explained that the purpose of Rule 56 is to "enable a party who believes there is no genuine dispute as to a specific fact essential to the other side's case to demand at least one sworn averment of that fact before the lengthy process of litigation continues." *Lujan v. National Wildlife Federation,* 497 U.S. 871, 888 (1990). The means by which this is accomplished is by "pierc[ing] the pleadings and . . . assess[ing] the proof in order to see whether there is a genuine need for trial." *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.,* 475 U.S. 574, 587 (1986).

    b.    To survive summary judgment, the non-movant must set forth "specific facts showing that there is a genuine issue for trial." **FED.R.CIV.P.** 56(e). "Factual disputes are 'genuine' only 'if the evidence is such that a reasonable jury could return a verdict for the [non-movant].'" *Oest v. Illinois Dep't of Corrections,* 240 F.3d 605, 610 (7th Cir. 2001) (quoting *Anderson,* 477 U.S. at 248). Summary judgment is not a disfavored procedural shortcut; rather, it is an integral part of the federal rules, which are designed to secure the just and expeditious determination of every action. *United Ass'n of Black Landscapers v. City of Milwaukee,* 916 F.2d 1261, 1267-68 (7th Cir. 1990).

    c.    Because Dale is proceeding without counsel, the notice required by *Lewis v. Faulkner,* 689 F.2d 100 (7th Cir. 1982), was issued. Through this notice, Dale was notified of the nature of the motion for summary judgment, of the proper manner in which to respond and of the consequences of failing to respond. Nonetheless, Dale has not responded to the motion for summary judgment with argument, with evidentiary material, or with the statement of material facts in dispute required by Local Rule 56.1(b). The consequence of this is that Dale has admitted the truth of the defendant's statement of material facts for purposes of the court acting on the motion for summary judgment. See *Johnson v. Gudmundsson,* 35 F.3d 1104, 1108 (7th Cir. 1994). This does not alter the standard for assessing a Rule 56(c) motion, but does "reduc[e] the pool" from which the facts and inferences relative to such a motion may be drawn. *Smith v. Severn,* 129 F.3d 419, 426 (7th Cir. 1997). The Seventh Circuit Court of Appeals has consistently "sustained entry of summary judgment where 'the nonmovant has failed to submit a factual statement in the form called for by the pertinent rule and thereby conceded the movant's version of the facts.'" *Brasic v. Heinemann's Inc.,* 121 F.3d 281, 286 (7th Cir. 1997)(quoting *Waldridge v. American Hoechst Corp.,* 24 F.3d 918, 922 (7th Cir. 1994)).

    2.    Dale's claim is asserted pursuant to 42 U.S.C. § 1983. To state a claim under § 1983, a plaintiff must allege (1) that he was deprived of a right secured by the Constitution or laws of the United States and (2) that the deprivation was caused by a person acting under color of state law. *Flagg Bros., Inc. v. Brooks,* 436 U.S. 149, 155-56 (1978). "The purpose of § 1983 is to deter state actors from using the badge of their authority to deprive individuals of their federally guaranteed rights and to provide relief to victims if such deterrence fails." *Wyatt v. Cole,* 112 S. Ct. 1827, 1830 (1992). Subject matter jurisdiction over the claims is conferred by 28 U.S.C. § 1331.

3. "Section 1983 is not itself a source of substantive rights; instead it is a means for vindicating federal rights elsewhere conferred." *Ledford v. Sullivan,* 105 F.3d 354, 356 (7th Cir. 1997) (citing *Baker v. McCollan*, 443 U.S. 137, 144 n.3 (1979)). Accordingly, "the first step in any [§ 1983] claim is to identify the specific constitutional right infringed." *Albright v. Oliver,* 510 U.S. 266, 271 (1994). The Fourth Amendment's protection against unreasonable seizures is the right implicated by Dale's claim in this case. *Graham v. Connor,* 490 U.S. 386, 396 (1989). "[A]ll claims that law enforcement officers have used excessive force--deadly or not--in the course of an arrest, investigatory stop, or other 'seizure' of a free citizen should be analyzed under the Fourth Amendment and its 'reasonableness' standard." *Id.; see also Conyers v. Abitz,* 416 F.3d 580, 586 (7th Cir. 2005) ("[C]onstitutional claims must be addressed under the most applicable provision.").

4. To decide whether the amount of force used during a seizure is "excessive," a court examines the totality of the circumstances to determine whether the intrusion on the citizen's Fourth Amendment interests was justified by the countervailing government interests at stake. *See Lanigan v. Village of E. Hazel Crest,* 110 F.3d 467, 475 (7th Cir. 1997).

> Whether excessive force was used is evaluated under the "objective reasonableness" standard, through which courts assess whether the actor's actions were objectively reasonable "in light of the facts and circumstances confronting them, without regard to their underlying intent or motivation." [*Graham,* 490 U.S.] at 397; *Chapman v. Keltner,* 241 F.3d 842, 847 (7th Cir. 2001). Factors which are relevant to this evaluation include "the severity of the crime at issue, whether the suspect poses an immediate threat to the safety of the officers or others, and whether he is actively resisting arrest or attempting to evade arrest by flight." *Graham,* 490 U.S. at 396. Ultimately, the excessive force inquiry "looks to whether the force used to seize the suspect was excessive in relation to the danger he posed--to the community or to the arresting officers--if left unattended." *McDonald v. Haskins,* 966 F.2d 292, 294 (7th Cir. 1992); *see also Lanigan v. East Hazel Crest,* 110 F.3d 467, 475 (7th Cir. 1997).

*Jacobs v. City of Chicago,* 215 F.3d 758, 773 (7th Cir. 2000).

5. The following facts are undisputed or if disputed represent the version most favorable to Dale as the non-movant. *Reeves v. Sanderson Plumbing Products, Inc.,* 530 U.S. 133, 150 (2000).

> ▪ On August 25, 2007, Officer Brown with the Indianapolis Metropolitan Police Department (hereinafter "IMPD") responded to a report of a residential alarm at 3141 Eastern Avenue. Upon arrival, Vetta Holland-Scott flagged down Officer Brown and pointed to an African-American male who was wearing a white t-shirt, blue jeans and a dark hat and jogging away from the scene. That person was later identified as Dale.

- Officer Brown located Dale running north in the 3300 block of Temple Avenue. Officers established a perimeter around the block, Officer Brown looked south-bound behind homes on Temple Avenue and spotted Dale jump up and flee into a backyard, and IMPD Officer Mielke, the defendant in this action, was called to the scene.

- Officer Mielke arrived on scene with a police dog and entered the same backyard as Dale and the other Officers. Dale was hiding behind a shed in the yard. Dale was seen peeking out from around the corner of the shed. Officers Brown and Mielke identified themselves as police officers, and Officer Mielke ordered Dale to surrender or the dog would be deployed. Dale disappeared back behind the shed and did not surrender.

- A police dog was dispatched. The dog engaged Dale on his right arm. Seconds later, Officer Mielke pulled the dog off Dale.

- As Dale was on the ground, Officer Mielke spotted a large butcher knife on Dale's front belt. Officer Mielke grabbed Dale's left arm and also controlled the dog. Officer Brown then secured the butcher knife. Once the knife and dog were controlled, Officer Mielke ordered Dale to keep his hands in front of him on the ground. Because of the confined area with the dog, knife and suspect, Officer Mielke ordered Dale to crawl on his belly out from behind the shed so he could be handcuffed in a more open area. Dale complied and was handcuffed by Officer Brown. Dale told Officer Brown that he had been drinking.

- Officer Brown talked to Vetta Holland-Scott, and she stated that she saw Dale coming out of the window of 3141 Eastern Avenue. Dale did not have permission to be in the residence.

- Once Dale was handcuffed, an ambulance arrived on scene. Paramedics treated Dale for a "superficial" wound to his right arm. After receiving treatment, Dale was transported to the Arrestee Processing Center.

6. In light of the foregoing facts, it must be concluded that Officer Mielke acted reasonably in first warning Dale that the canine would be used, then deploying the dog when Dale did not surrender as ordered, then pulling the dog off of Dale's right arm, and then directing that Dale crawl out from behind the shed in light of the butcher knife which had been seen in Dale's belt. Dale had fled from police, he had actively attempted to evade their search of him, he disregarded additional orders that he surrender, even after being informed that if he did not do so the canine would be deployed, and he was armed with a butcher knife. Dale was a suspect in a felony, he posed a danger to both police officers and others if he kept up his evasion of police, and he was actively attempting to evade arrest by flight. The force used in apprehending Dale–that being the use of the dog by Officer Mielke–was not constitutionally excessive. *Estate of Phillips v. City of Milwaukee,* 123 F.3d 586, 592-93 (7th Cir. 1997) (where an offender is resisting arrest, an officer can use that amount of force necessary to overcome the offender's resistance).

4

7. Summary judgment is, in a rough sense, "the 'put up or shut up' moment in a lawsuit, when a party must show what evidence it has that would convince a trier of fact to accept its version of events." *Schacht v. Wisconsin Dep't of Corrections,* 175 F.3d 497, 504 (7th Cir. 1999). Dale, as the non-movant, has doomed his case by not coming forward with a genuine question of fact for trial. *Liberles v. County of Cook,* 709 F.3d 1122, 1126 (7th Cir. 1983) ("It is a well-settled rule that a party opposing a summary judgment motion must inform the trial judge of the reasons, legal or factual, why summary judgment should not be entered.").

8. "Summary judgment is not a discretionary remedy. If the plaintiff lacks enough evidence, summary judgment must be granted." *Jones v. Johnson,* 26 F.3d 727, 728 (7th Cir. 1994), *cert. granted* 513 U.S. 1071 (1995). That is precisely the situation with respect to the present case, and for that reason the defendant's motion for summary judgment (dkt 29) must be **granted.**

Judgment consistent with this Entry shall now issue.

So ordered.

_____
DAVID F. HAMILTON, Chief Judge
United States District Court

Date:   3/11/09